ROGAN *v.* GUSTAFSON.

1. ATTACHMENT —CLAIMANT'S BOND —ACTION —EVIDENCE —SUFFI-
   CIENCY.

   In an action of assumpsit on a bond given by the claimant of
   attached property, evidence examined, and *held,* that the
   .testimony of claimant and his witnesses showing the bona
   fides of the sale under which he acquired the debtor's interest
   in the goods being undisputed, there was no evidence to sup-
   port an instruction leaving the question of fraudulent trans-
   fer to the jury, and that a verdict should have been directed
   for defendants.

2. INTOXICATING LIQUORS — PROPERTY RIGHTS — ILLEGALITY OF
   TRANSACTION—EFFECT AS SHOWING FRAUD.

   That a sale of the stock and fixtures of a saloon included also
   the tax certificate, and that the buyer unlawfully conducted
   the business under the certificate, would not warrant a jury
   in disregarding undisputed testimony showing the sale to be
   bona fide and finding that the buyer was in fact carrying on
   the business for the seller.

Error to Iron; Stone, J. Submitted January 10, 1908.
(Docket No. 41.) Decided March 17, 1908.

Assumpsit by Martin Rogan against Charles Gustaf-
son, principal, and Alex Dalpra and Fred Reindl, sureties,
on a bond. There was judgment for plaintiff, and de-
fendants bring error. Reversed.

*M. H. Moriarty* and *Clarence D. Dwyer,* for appel-
lants.

*George S. Power,* for appellee.

BLAIR, J. The writ of error in this case is prosecuted
by defendants to review a judgment in favor of plaintiff
against Gustafson as principal and the other two defend-
ants as sureties on a bond given under section 733, 1
Comp. Laws. At the close of the testimony in the case,

defendants' counsel requested the court to direct a verdict in their favor, for the reason that the undisputed evidence showed that the defendant Gustafson was the owner of the property. The court refused this request and instructed the jury with reference thereto as follows:

" Now, gentlemen, it comes right down to the question, Was this a bona fide sale and transaction, so far as these goods and chattels were concerned, from Tissue to Hopf, and, after a month, from Hopf to Gustafson? The bill of sale, I think, is dated July 2. That was just a week before this judgment was put on. A week after that time Mr. Rogan commences an attachment suit against Tissue, a man who is not in the country and a man who cannot be served with process, and he seizes these goods, and there in steps Mr. Gustafson and gives this bond. Now, gentlemen, if you shall say that by a preponderance of evidence here, it appears that these goods and chattels described in this bond and contained in the saloon, were the goods and chattels and property of Gustafson at the time, then your verdict will be, no cause of action.

" But if, on the other hand, you say that it was not; that it was tainted with a whole fraudulent transaction; that there was no bona fide transfer of the property here; that it was all a scheme to defraud Rogan and any other creditors, then Rogan is entitled to a verdict at your hands for $265."

This ruling and instruction raise the question for our consideration.

Prior to May 31, 1906, one Fred Tissue was engaged in carrying on a saloon in Crystal Falls and was the owner of the tax certificate and stock used in his business, though, perhaps, he was not the absolute owner of the stock. At some time prior to July 9th, but whether before or after the sales to Hopf and Gustafson hereinafter referred to does not appear, Tissue became indebted to the plaintiff Rogan in the sum of $265. On May 31, 1906, Tissue executed a written bill of sale of the property to one Fred Hopf for an expressed consideration of $576. It was understood that the "license," so-called, was included in the sale, but it was not mentioned in the bill of sale. On the 2d day of July, 1906, Hopf executed a written bill of

sale to the defendant Gustafson for an expressed consideration of $796.11. Both of these sales were brought about by the defendant Fred Reindl, an agent of the Menominee Brewing Company and a brother-in-law of Hopf. Reindl had advanced $100, and another man $400, to Tissue to enable him to pay the liquor tax, and Tissue owed Reindl for his advance at the time of the sale to Hopf. Reindl loaned to Gustafson the money with which he bought out Hopf. Reindl testified:

"*The Court*: State to the jury whether the deal between Tissue and Hopf, as you understand it, was a bona fide, square deal or not—an actual sale and transfer.

"*A*. If I can tell just how the deal was—there was another gentleman and I went in and paid Tissue $400 to pay his license. I gave him $100 personally, myself, to make the $500, and the other man gave him $400. I got my brother-in-law to buy the place.

"*Q*. That is Hopf?

"*A*. And when he bought the place there wasn't any more than $10 worth of liquor that belonged to Tissue. The bills will show for it. Hopf paid every cent for the liquor in that place. The agents came in there, and he paid for the liquors and cigars and carpet on the floor, and curtains and bar, and even the clothes that the bartender wore. My brother-in-law paid Mr. Lustfield and Mr. Wehse."

Hopf testified:

"I know Fred Tissue. I had dealings with him on the 27th and 28th of May last. I bought a stock of liquors, cigars and fixtures in the room there. He didn't own much of the stock. I had to pay all the different liquor bills he had of liquor to the dealers. It cost me between six and a half and seven hundred dollars, with the license. I carried on the business about a month and I went at the tailor trade. I sold the stock to Mr. Gustafson—Charles Gustafson. He paid me between seven and eight hundred dollars for it. It was a cash transaction and I delivered the stock over to him. He took possession of the stock about the second day of July.

"*Q*. Did you execute that bill of sale at that time?

"*A*. Yes, sir.   *   *   *

"*Q.* Did you buy his rights under the license, or claim to, is that the idea?

"*A.* Yes, sir.

"*Q.* Also his entire interest in the stock?

"*A.* Yes, sir.  *  *  *

"*Q.* Were you in there yourself?

"*A.* Yes, sir.

"*Q.* And had this government license and claimed to be operating under the other man's license?

"*A.* Yes, sir."

Gustafson testified that he did not know Tissue, that he bought the stock and "license" of Hopf and paid him $796 in cash on July 2, 1906:

"*Q.* You testified that the goods without fixtures were worth $350.

"*A.* Yes, sir.

"*Q.* In your bill of sale from Hopf to you, you didn't include the license. Why was that?

"*A.* They agreed the license was good to me—

"*Q.* Whose name was the license in?

"*A.* Fred Tissue.

"*Q.* Had you taken out any other license?

"*A.* Not, only the government license.

"*Q.* You had been doing business there continually since that time?

"*A.* Yes, sir.

"*Q.* It was understood at the time you purchased those goods that the money you paid was to pay for the license also?

"*A.* Yes."

Hopf paid the United States internal revenue tax on the business of retail liquor dealer in the saloon in question for the month of June, 1906, and Gustafson paid such tax for the months of July, 1906, to June, 1907, both inclusive, and each received the customary receipt from the collector.

Plaintiff instituted suit in attachment and seized the property in question on the 9th day of July, 1906, which property was delivered to Gustafson on the execution of the bond above mentioned. The ground for the attachment, as stated in the affidavit, was "that the said Fred

Tissue has absconded from the State with intent to defraud his creditors."

We are of the opinion that the defendants' request should have been given and that the court erred in submitting the question of fraud to the jury. The testimony is undisputed that the consideration for the bill of sale was actually paid by Gustafson, and we find no circumstances sufficient to warrant a finding by the jury that there was no bona fide transfer to him or that he had entered into a "scheme to defraud Rogan and any other creditors." So far as this record discloses, all of the creditors of Tissue, except Rogan, were paid by Hopf, and there is nothing in the record to indicate that Gustafson had, or was chargeable with, knowledge that Tissue was indebted to Rogan. He testified that he did not know Tissue, and no inquiries were prosecuted by plaintiff's counsel as to his knowledge of Rogan's claim or of Tissue's circumstances. In fact, there is no evidence in the record that Tissue was indebted to Rogan at the time of the bill of sale to Gustafson. The mere fact that the attempted sale of the tax certificate was illegal and that the conduct of the business was unlawful would not warrant a jury, under the circumstances shown in this record, in disregarding the undisputed testimony and finding that Gustafson was in fact carrying on the business for Tissue.

Judgment reversed, and new trial granted.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.